FINCH, P. J.
The defendants appeal from a judgment quieting plaintiff’s title to certain mining property.
The plaintiff alleged ownership, in fee of the property and that defendants claimed an interest therein adverse to him. *173 The answer denied plaintiff’s ownership and admitted that the defendants claimed an interest in the property.
Defendants demurred to the complaint on the grounds that it does not state facts sufficient to constitute a cause of action and “that the same is uncertain in that it alleges ownership in fee, in plaintiff, and then bases title on a mining location made by one Ormand Smith.” The complaint contains the usual allegations of an action to quiet title and the reference therein to the mining location by Smith is merely for the purpose of describing the property. Neither ground of demurrer, therefore, has merit.
The property described in the complaint is known as the Snow Shoe mine or mining location. From the briefs it may be gathered that the defendants own the Chemung mine lying to the south of the Snow Shoe, the north end line of the Chemung coinciding with the south end line of the Snow Shoe. Neither party proved ownership and appellants contend that the judgment must be reversed for such failure of proof. At the beginning of the trial the following occurred:
“The Court: The complaint seems to be in the usual
form for an action to quiet title. From what has occurred, I take it that the main controversy is as to the boundaries of the claim of plaintiff.
“Judge Murphey: That is the only question in so far as it appears to me to get at, and if I recollect right it is the south line of the Snow Shoe and the north boundary line of the Chemung—is that correct?
“M'r. Whitmore: That is the line in controversy. There may be other questions arise later.
“Judge Murphey: It is the southern boundary line of the Snow Shoe and the northern boundary line of the Chemung claim.
“The Court: The understanding will be for the present at least to limit the testimony to the location of the boundary, assuming that Mox Smith was the owner of the Snow Shoe Mine and that he is now dead, and that action is being brought by his administrator, duly appointed by the order of the court?
“Judge Murphey: For the purpose of determining the boundary line.
‘ ‘ Mr. Whitmore: For that purpose only.
*174 “The Court: That is the purpose only. You may proceed.”
In their brief appellants say: “It developed at the trial that the real controversy was the location of the south end line of the Snow Shoe mine where it conflicts with the north end line of the Chemung mine.” The evidence of both parties was directed exclusively to the issue so stated. [1] After the understanding had between the court and respective counsel as to the scope of the trial and after the completion of the trial on the theory that but the one issue was involved, appellants cannot now be heard to complain that the other issues raised by the pleadings were not tried. Such understanding must be treated as an admission or stipulation by defendants that the plaintiff was the owner of the Show Shoe.
The appeal is taken on the judgment-roll and a bill of exceptions. Finding No. Ill describes plaintiff’s mining claim by tracing the boundaries thereof from monument to monument, the description of all monuments being identical and consisting of a “stake 4x4 inches and about four feet high, set in a mound of stone.” Omitting from the finding the description of the several monuments, the claim is bounded as follows:
“Commencing at the location monument of said claim . . . located eleven feet south from a certain cut known as the Schofield cut . . . and running thence easterly two hundred and forty-two feet, more or less, to the east center side line monument; . . . thence running northerly six hundred and thirty-one and 6/10 feet, more or less, to the northeast corner monument; . . . thence westerly six hundred feet, more or less, to the northwest corner monument; . . . thence southerly six hundred and thirty-six feet, more or less, to the west center sideline monument; . . . thence southerly seven hundred and twenty-four feet, more or less, to the southwest corner monument; . . . thence easterly six hundred feet, more or less, to the southeast corner monument; . . . thence northerly seven hundred and twenty-four feet, more or less to the east center sideline stake of said Snow Shoe mining claim hereinbefore described.”
In their specifications of particulars in which the evidence is claimed to be insufficient to sustain the findings, appellants state: “The evidence is insufficient to sustain finding *175 ‘III’ and particularly in that the location monument of the Snow Shoe mine or mining location was located about 11 feet south of a certain cut known as the Schofield Cut and in that the distance from the location monument to the north end line of the Snow Shoe mine or mining location is found to be 636 feet, when the evidence shows that it is 750 feet, and in that the evidence shows that the location monument is 214 feet northerly of the point where the same is located by said finding.”
There was positive evidence that the location monument was originally placed eleven feet north of the Schofield cut. Admittedly the finding is incorrect in locating this monument eleven feet south of the cut instead of eleven feet north thereof. This error, however, is immaterial, as it forms no part of the described boundaries. The course of measurement from the location monument to the east center side line monument is described as “easterly,” and easterly would correctly describe such course whether the location monument be placed eleven feet north of the cut or eleven feet south thereof. The boundary monuments were all in place. Courses and distances must give way to ascertained monuments. (Sec. 2077, Code Civ. Proc.) Defendants introduced evidence to the effect that the location monument was a considerable distance north of the cut, but such evidence merely created a conflict on which the findings are conclusive on appeal.
There is evidence to support the court’s finding as to the location of the south end line. George Van Sickle testified: “I am familiar with the mining location called the Snowshoe. Have seen it many times. I think the Snow Shoe claim was located in October, 1912. I helped measure it off. ... I have been familiar with the Snow Shoe ever since 1912. The southwest corner of the Snow Shoe was staked. As near as I can tell you it was staked properly. It was square across. The end center line is in the proper place. ... I saw the south end center stake just after the location was made.” William M. Puller testified: “I am familiar with the Snow Shoe claim. I first knew it about October, 1912. I first made an examination of it about the first of the year 1913. . . . All the monuments of the Snow Shoe, except the southwest corner, are about the same as they were. There is a monument there now. Many times *176 there was no monument there. Many times it has been away. I built it up several times myself. The south center monument was about 200 feet south of a large bluff. The north end center of the Chemung is very near the bluff and it has been there ever since I have been in Masonic, and the south end center line of the Snow Shoe is about 200 feet south of that.” The evidence shows that the Snow Shoe was located before the Chemung and consequently any conflict in the original boundaries must be resolved in favor of the former. [2] From the foregoing it is clear that the findings are supported by the evidence.
The judgment is affirmed.
Hart, J., and Burnett, J., concurred.